IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LISA SALAZAR,                           :    CIVIL ACTION
                                        :    No. 12-6170
          Plaintiff,                    :
                                        :
     v.                                 :
                                        :
CAROLYN W. COLVIN, ACTING               :
COMMISSIONER OF SOCIAL SECURITY,        :
                                        :
          Defendant.                    :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        November 24, 2014


I.   **INTRODUCTION**

          Lisa Salazar ("Plaintiff") brought this action

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial

review of the decision of Michael J. Astrue[1]-- then-Commissioner

of the Social Security Administration ("Commissioner")--denying

her application for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI") under Titles II and XVI of

the Social Security Act ("the Act"). Upon consideration of the

administrative record, submitted pleadings, the Report and

_____

[1]       Carolyn W. Colvin became the Acting Commissioner of
Social Security on February 14, 2013. Pursuant to Rule 25(d) of
the Federal Rules of Civil Procedure, Carolyn W. Colvin should
be substituted for previous Commissioner Michael J. Astrue as
defendant in this suit. No further action need be taken, as
explained in the last sentence of 42 U.S.C. § 405(g) of the
Social Security Act.

Recommendation, and objections thereto, the Court will overrule Plaintiff's objections to the Report and Recommendation, adopt the Report and Recommendation, and grant judgment for the Commissioner.

## II.   BACKGROUND

### A.   Factual Background

Plaintiff, born on October 12, 1982, alleges that she suffers from a number of impairments, including obsessive compulsive disorder, post-traumatic stress disorder, and anxiety disorder. Administrative Record (hereinafter "R.") at 86, 104. Plaintiff asserts that these conditions render her unable to be around people for extended periods of time, and make it hard for her to leave her home. R. at 45, 48. She frequently gets into verbal altercations with others in public, without significant provocation or justification. R. at 48-51. Her anger issues and lack of restraint have caused her to argue with police officers and a transit security officer. Id.

Plaintiff is single, lives in an apartment with her two children, ages six and eight, and receives food stamps and welfare benefits. R. at 38-39. Her day-to-day life has been summarized as follows:

2

Plaintiff routinely wakes up at approximately 7:00 a.m., she normally retires at 8:00 p.m., after she puts her children to bed. (R. 46). On a rough day, Plaintiff may stay awake until 11:00 p.m.; she often stays awake at night watching television. (R. 46). Plaintiff enjoys cooking and is able to prepare meals for herself and her children. (R. 44). She grocery shops and goes to the drugstore; however, she often has verbal altercations when she travels to stores. (R. 45, 47-48). She does not own a car, but is able to drive, although her driver's license is expired. (R. 43). Plaintiff does not have any hobbies or attend church. (R. 43-45). She does not exercise, engage in social activities or visit friends, except for a few gentlemen friends. (R. 44). Her mother is deceased and she does not have any family members other than her children. (R. 44). Plaintiff does not smoke or drink alcohol. (R. 46)

Report and Recommendation (hereinafter "R&R") 3. Plaintiff graduated from high school, and has previously worked as a customer service representative, a data entry clerk, and a dietary aide. R. at 39-40, 51.

Plaintiff was twenty-six years old on her alleged disability onset date--which was January 21, 2009. R. at 86. She claims that she was fired from her job as a customer service representative after she called her supervisor's bosses to find "whoever [she could] yell at the most" about complaints that she had. R. at 40-42. She had held that position for more than three years, from October 11, 2005 to January 21, 2009. R. at 39-40.

3

Plaintiff claims that her disabling conditions have prevented her from working since her termination. R. at 86.

B.   Procedural History

Plaintiff filed for DIB and SSI benefits on October 19, 2009, claiming an alleged disability onset date of January 21, 2009. R. at 86. Plaintiff's claim was denied on March 11, 2010, R. at 62, 66, and she was granted an administrative hearing on January 28, 2011, R. at 71-85. At that hearing, Plaintiff, pro se, and Vocational Expert ("VE") Lee Levin testified before Administrative Law Judge George C. Yatron ("ALJ Yatron"). Id. at 35-58. Analyzing Plaintiff's claim according to the standard sequential evaluation process for disability,[2] ALJ

----

[2]     The Social Security regulations provide the following five-step sequential evaluation for determining disabled status:

(1) If claimant is working, doing substantial activity, a finding of not disabled is directed. Otherwise proceed to Step 2. See 20 C.F.R. §§ 404.1520(b), 416.920(b).

(2) If claimant is found not to have a severe impairment which significantly limits his or her physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. See §§ 404.1520(c), 416.920(c).

(3) If claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of

Yatron found that Plaintiff does not qualify as disabled. Id. at 23-31. The Appeals Council denied her request for review, rendering ALJ Yatron's ruling the final decision of the Commissioner. Id. at 1.

Plaintiff filed a request to proceed in forma pauperis on October 31, 2012, which the Court granted. ECF No. 2. Plaintiff filed the pending complaint on November 2, 2012. ECF No. 3. Subsequently, Defendant filed an answer, along with the administrative record, on January 7, 2013. ECF Nos. 6, 7. Plaintiff filed a brief and statement of the issues in support of request for review (ECF No. 8) on February 15, 2013, which Defendant responded to in opposition (ECF No. 10) on March 20, 2013. The case was referred to Magistrate Judge Carol Sandra Moore Wells ("Judge Wells") on March 21, 2013. ECF No. 11. Judge Wells filed the Report and Recommendation on April 30, 2014, recommending that Plaintiff's request for review be denied and

---

disabled is directed. Otherwise proceed to Step 4. See §§ 404.1520(d), 416.920(d).

(4) If claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. See §§ 404.1520(f), 416.920(f).

(5) The Commissioner will determine whether, given claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, he or she is or is not disabled. See §§ 404.1520(g), 416.920(g).

that judgment be entered in favor of the Commissioner. ECF No.
14. Plaintiff filed her objections on May 9, 2014. ECF No. 15.
The case is now ripe for disposition.

### III. STANDARD OF REVIEW

The Court undertakes a de novo review of the portions
of the Report and Recommendation to which Plaintiff has
objected. See 28 U.S.C. § 636(b)(1); Cont'l Cas. Co. v. Dominick
D'Andrea, Inc., 150 F.3d 245, 250 (3d Cir. 1998). The Court "may
accept, reject or modify, in whole or in part, the findings or
recommendations made by the magistrate judge." § 636(b)(1).

In reviewing the Commissioner's final determination
that a person is not disabled and, therefore, not entitled to
Social Security benefits, the Court may not independently weigh
the evidence or substitute its own conclusions for those reached
by the ALJ. See Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir.
2002). Instead, the Court must review the factual findings
presented in order to determine whether they are supported by
substantial evidence. See 42 U.S.C. § 405(g); Rutherford v.
Barnhart, 399 F.3d 546, 552 (3d Cir. 2005).

Substantial evidence constitutes that which a
"reasonable mind might accept as adequate to support a
conclusion." Rutherford, 399 F.3d at 552 (internal quotation

6

marks omitted). "It is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'" Id. (quoting Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971)). If the ALJ's decision is supported by substantial evidence, the Court may not set it aside "even if [the Court] would have decided the factual inquiry differently." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

## IV.   ALJ YATRON'S FINDINGS

An ALJ uses the above-mentioned five-step inquiry to determine if a plaintiff is entitled to SSI benefits. Basically, a plaintiff must establish (1) she is not engaged in any substantial gainful activity, and (2) she suffers from a severe impairment. Jesurum v. Sec'y of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995) (citing Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987)). If the plaintiff satisfies these two elements, the Commissioner determines (3) whether the impairment is as severe as the impairments listed in 20 C.F.R. pt. 404, Subpt. P, App. 1, which creates a presumption of disability. Id.

If the plaintiff's medical impairment is not "listed," the plaintiff must prove that (4) the impairment nonetheless prevents her from performing work that she has performed in the past. Id. The relevant inquiry is "whether the plaintiff retains

7

the residual functional capacity ["RFC"] to perform her past relevant work." Fargnoli v. Halter, 247 F.3d 34, 39 (3d Cir. 2001). If the plaintiff proves she does not, the Commissioner must grant her benefits unless the Commissioner can demonstrate (5) that, considering plaintiff's RFC, age, education, and work experience, there are jobs available in significant numbers in the national economy that the plaintiff can perform. Jesurum, 48 F.3d at 117 (citing Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985)).

After the hearing on January 28, 2011, ALJ Yatron performed this analysis, and issued the following findings, as summarized by Judge Wells:

> 3. [Plaintiff] has the following severe impairments: Depression disorder, generalized anxiety disorder and obsessive compulsive disorder (20 C.F.R. 404.1520(c) and 416.920(c)).
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] is restricted from detailed instructions and

8

limited to simple and routine work involving limited contact with the public.

6. [Plaintiff] is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

7. [Plaintiff] was born on October 12, 1982 and was 26 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. 404.1563 and 416.963).

8. [Plaintiff] has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is "not disabled," whether or not [Plaintiff] has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 C.F.R. 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from January 21, 2009, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

R. at 25-31.

## V.   DISCUSSION

Plaintiff raises six objections to Judge Wells' Report and Recommendation. The Court will overrule those objections and adopt Judge Wells' Report and Recommendation, for the reasons set forth below.

### A.   Objection 1: Judge Wells and ALJ Yatron Misrepresented Mr. Pompilio's Report

Plaintiff first argues that both ALJ Yatron and Judge Wells misrepresented the report of Mr. Pompilio, Plaintiff's therapist--and thus they lacked a proper factual basis for giving the report little weight. Pl.'s Objections 2-3. In this vein, Plaintiff points to a quote of Mr. Pompilio, in which he states that "[t]here were 2 or 3 verbal outbursts since her treatment at this facility"--but in the following paragraph he states that she has "verbal or physical altercations, approximately 1-2 times per week." R. at 235. ALJ Yatron apparently views these statements as conflicting, R. at 27, but as Plaintiff points out, the former statement likely refers to outbursts that had occurred at the facility since her treatment

10

began, Pl.'s Objections 2.[3] According to the Plaintiff, this seeming contradiction does not provide an adequate reason for discounting Mr. Pompilio's report. Pl.'s Objections 2-3.

This contention misses the point. Neither ALJ Yatron nor Judge Wells cited that apparent conflict as a reason for assigning Mr. Pompilio's report little weight. As Judge Wells observed, ALJ Yatron concluded that "[a]bsent treating notes to support this assessment, little weight is accorded to this medical source opinion (SSR 96-2p)." R&R 9. Judge Wells added that "the treatment notes of Plaintiff's treating psychiatrists indicate that her condition improved with medication and therapy. Thus, the record evidence does not support Mr. Pompilio's disabling conclusions." Id. at 9. The record similarly does not support Plaintiff's claim that ALJ Yatron and Judge Wells improperly discounted Mr. Pompilio's report.

---

[3]       Although the statement is somewhat ambiguous, the context provided by the preceding sentence's reference to Plaintiff's conduct "[d]uring [their] sessions" lends support to this reading. R. at 235.

11

B.   Objections 2 and 3: Judge Wells and ALJ Yatron Should

Not Have Discounted Mr. Pompilio's Assessment for Lack

of Treatment Notes; They Also Mischaracterized

Evidence and Incorrectly Found Gradual Improvement

Plaintiff also objects to Judge Wells' finding that

ALJ Yatron properly discounted Mr. Pompilio's report because it

is not supported by any treatment notes.[4] Pl.'s Objections 3.

--------

[4]      In a footnote, Plaintiff observes that Judge Wells did
not address her argument that, because she was not represented
by counsel, ALJ Yatron should have developed the record by
requesting Mr. Pompilio's treatment notes. Pl.'s Objections 3
n.2. Plaintiff cites Reefer v. Barnhart, 326 F.3d 376, 380 (3d
Cir. 2003), which states that an ALJ has a heightened duty to
help a pro se claimant to develop the administrative record.

     However, the regulations also state that if a claimant
does not provide required medical evidence, the Commission "will
have to make a decision based on the information available in
[that person's] case." 20 C.F.R. § 404.1516. And while ALJ
Yatron may have been under a heightened responsibility to ensure
there was sufficient evidence upon which to base a disability
determination, the Court finds that he fulfilled that obligation
to the Plaintiff.

     Mr. Pompilio was Plaintiff's therapist, and therapists
are not considered "acceptable" medical sources that are
entitled to "controlling weight. See §§ 404.1513(a), 416.913(a).
Apart from Mr. Pompilio's assessment, the record contains the
initial evaluation by Lehigh Valley psychiatrist Dr. Mahlab, as
well as psychiatric progress notes, medication records, and
other "acceptable" medical evidence that provided a sufficiently
substantial basis for ALJ Yatron's decision.

     Moreover, the circumstances confronted by the Reefer
court are distinguishable from this case. There, the ALJ failed
to follow up on the claimant's testimony about a past stroke

12

Judge Wells observed that, although Mr. Pompilio treated

Plaintiff each week for more than a year as her therapist, the

medical record does not contain any of his treatment notes to

support his assessment. R&R 9. Moreover, Judge Wells found

evidence to support that Plaintiff's "condition improved with

medication and therapy" and, thus, she concluded that "the

---

that was not evidenced in the record--"an occurrence of obvious
relevance to th[e] disability determination." Reefer, 326 F.3d
at 380. Because the ALJ did not develop this evidence--for
instance, by requesting additional medical records--the Court
found that the ALJ did not have a sufficient basis upon which to
make his disability determination. Id.

    Here, ALJ Yatron not only looked into the medical
records in evidence, but extensively inquired into Plaintiff's
alleged symptoms and limitations. See R. at 40-41, 45-51. ALJ
Yatron also specifically asked if Plaintiff had any additional
documents to add to the record, and permitted the record to stay
open for thirty days for Plaintiff to submit additional medical
evidence. Id. at 56. "Unlike the situation in Reefer, when
Plaintiff brought up issues not in the medical record, the
hearing transcript shows a fully developed discussion of same,"
and "Plaintiff cannot point to any condition not sufficiently
addressed" by other evidence in the record. Smythe v. Colvin,
No. 12-01798, 2013 WL 3340660, at *14 (W.D. Pa. July 2, 2013)
(holding that the ALJ did not fail in her duty to help pro se
plaintiff develop the record).

    Finally, the absence of an attorney does not
necessarily justify a remand. Hess v. Sec'y of Health, Ed. &
Welfare, 497 F.2d 837, 840 n.4 (3d Cir. 1974). Remand is only
appropriate where there is a showing of clear prejudice or
unfairness at an administrative hearing. Domozik v. Cohen, 413
F.2d 5, 9 (3d Cir. 1969). Given that Mr. Pompilio is not an
"acceptable" medical source, and considering all of the other
medical evidence available to support ALJ Yatron's decision, the
Plaintiff has failed to show clear prejudice or unfairness.

13

record evidence does not support Mr. Pompilio's disabling conclusions." Id.

Defendant asserts that "the absence of therapy notes from Mr. Pompilio does not end the inquiry regarding support for Mr. Pompilio's assessment[:] SSR 06-03p provides that in assessing opinions by a therapist there is to be a determination of the consistency of the opinion with other evidence." Pl.'s Objections 3. Defendant points to the opinion of examining psychologist Mr. Rosenfield, which indicated that Plaintiff's "ability to complete assignments and/or to sustain work or work-like related activity would appear to be fair to marginal," R. at 214, and that she exhibited pressured speech, nervousness, easy distractibility, and elevated anxiety characterized by expressing flights of ideas, R. at 212.

Plaintiff also objects to Judge Wells' finding that the psychiatric treatment notes indicate that with "slight modifications" of medication and therapy, Plaintiff exhibited "gradual improvement." Pl.'s Objections 3. 15. In support, Plaintiff refers to "incidents" of yelling and conflict with her therapist. See R. at 239, 241, 250. She also references increases in her prescribed dosages of Abilify (from 5 mg. to 15 mg., and then to 30 mg.), Lithium (from 600 mg. to 900 mg., and then to 1200 mg.), and Zyprexa (from 10 mg. to 15mg.) over the

14

course of more than a year of treatment. See id. at 235, 237, 238, 239, 250. Accordingly, Plaintiff rejects Judge Wells' "slight modifications" and "gradual improvement" statements as mischaracterizations of the evidence.

Although Plaintiff has produced evidence of her impairment, it does not necessarily follow that her impairment constitutes a legally cognizable disability, or that ALJ Yatron's conclusions were not based on substantial evidence. In his review of the medical record, ALJ Yatron concluded that Plaintiff is severely impaired, R. at 25--but that she also retains the residual functional capacity to perform a full range of work within certain limitations, R. at 28. As mentioned earlier, the applicable standard of proof requires more than a mere scintilla of evidence, but less than a preponderance--and if this Court finds sufficient evidence, it cannot set aside the decision "even if [it] would have decided the factual inquiry differently." Hartranft, 181 F.3d at 360.

Occasional "incidents" and increased medications make up just one side of the story revealed by the psychiatric treatment notes cited by the parties. At her initial status assessment by Dr. Mahlab in September 2009, Plaintiff appeared well groomed, casual, and looked her stated age; she was calm and cooperative; she oriented to person, place, time, and

situation; and her speech was normal and coherent. R. at 184.
Dr. Mahlab also noted that her affect was appropriate and her
mood was neutral, R. at 185; her memory skills were good, she
demonstrated average intelligence, and she had fair insight and
judgment, R. at 186. Moreover, Dr. Mahlab found a Global
Assessment of Functioning ("GAF") rating of 55--which
corresponds with "[m]oderate symptoms (e.g., flat affect and
circumstantial speech, occasional panic attacks) or moderate
difficulty in social, occupational, or school functioning (e.g.,
few friends, conflicts with peers or co-workers)." Diagnostic
and Statistical Manual of Mental Disorders 34 (4th ed., Text
Revision 2000) .

        Lehigh Valley psychiatric progress notes indicate that
the mental statement assessments remained essentially unchanged
from the initial evaluation in September 2009 through the most
recent evaluation, dated February 15, 2011. See R. at 196-204,
241-50. Plaintiff remained oriented to time, place, person, and
situation; she generally had a cooperative attitude, normal
speech, a calm and anxious mood, a euthymic affect, coherent
process, and fair to marginally fair judgment--with some anxiety
and somatic concerns in thought content, and with only
occasionally labile mood and depressed affect. Id. There are
even some indications of improvement, such as decreased time

16

spent washing her hands/dishes and better anxiety control. <u>See</u> <u>id.</u> at 201, 203-04.

As to Plaintiff's argument that Mr. Rosenfield's assessment aligned with Mr. Pompilio's assessment, the Court disagrees. Although the two assessments share some similar qualitative evaluations of Plaintiff's behavior, they come to quite different conclusions: Mr. Pompilio found Plaintiff "unable to complete even basic job duties," while Mr. Rosenfield diagnosed Plaintiff's state as "fair with continued medical monitoring," and gauged "her ability to complete assignments and/or to sustain work or work-like related activity . . . to be fair to marginal." [5] <u>Id.</u> at 213.

And moreover, as Mr. Pompilio is a mental health therapist, he is not considered an "acceptable" medical source, and his opinion is not entitled to controlling weight. 20 C.F.R. §§ 404.1513(a); 416.913(a). Plaintiff points out that SSR 06-03p--a ruling to "clarify how [to] consider opinions from sources who are not 'acceptable' medical sources"--states that there should be a determination of the consistency of a

---

[5]     The Merriam-Webster dictionary defines the word "marginal" as "close to the lower limit of qualification or acceptability," and the word "fair" as "without marked lack or defect." <u>Webster's Third New International Dictionary</u> (unabridged 2014). Thus, Dr. Rosenfield's usage indicates at least minimal adequacy to sustain work--if not more.

therapist's opinion with the other evidence. However, ALJ Yatron

did just that, and he found Mr. Pompilio's conclusion

insufficiently supported by the medical record. In particular,

ALJ Yatron stated that

> [c]laimant's assertion of wholly work
> preclusive limitations is not well supported
> by the routine treatment notes of record. At
> all times relevant to this decision, the
> claimant has not required any psychiatric
> hospitalizations and she has been generally
> maintained on the same treatment regimen
> with some evidence of improvement.
> Claimant's demonstrative activities are too
> at odds with a finding of disability.
> Specifically she serves as the primary care
> giver for two young children and is able to
> maintain her residence, albeit in an overly
> conscientious manner. In her function report
> dated December 2009, Claimant also reported
> caring for one dog, two cats and a turtle.

R. at 29.

ALJ Yatron's decision to assign Mr. Pompilio's

assessment little weight--given the lack of treatment notes and

the finding of inconsistency with other medical evidence--was

based upon substantial evidence. Accordingly, the Court finds

that the decision of ALJ Yatron and Judge Wells to discount Mr.

Pompilio's evaluation was not in error and, therefore,

Plaintiff's objection will be overruled.

C.   <u>Objection 4: ALJ Yatron's Failure to Consider SSR 06-03p was Reversible and Not Harmless Error</u>

Plaintiff also asserts that ALJ Yatron erred in failing to explicitly apply SSR 06-03p in his evaluation of Mr. Pompilio's assessment. However, as Judge Wells observed, "any failure to discuss or cite this ruling is, at most, a harmless error." R&R 10 (citing <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 552 (3d Cir. 2005), which explained that in determining whether remand was appropriate, the court must assess whether the seemingly overlooked data would have proved "outcome determinative"). Further, even though ALJ Yatron did not specifically cite SSR 06-03p by name, he applied essentially the same analysis dictated by that ruling, and found Mr. Pompilio's non-"acceptable" medical source opinion inconsistent with the other evidence. Accordingly, the Court will overrule this objection as well.

D.   <u>Objection 5: ALJ Yatron Improperly Relied on Assessment of a Non-Examining, Non-Treating Source</u>

Plaintiff's fifth objection asserts that Judge Wells erred in approving ALJ Yatron's reliance on the assessment of a non-examining, non-treating source to deny Plaintiff's claim. In her review of the denial, Judge Wells found that ALJ Yatron's

RFC assessment was supported. ALJ Yatron assigned significant weight to the RFC evaluation of a non-examining, non-treating state agency consultant, Dr. Ira Gensemer--who found that Plaintiff could meet the demands of competitive work on a sustained basis. R&R 11. ALJ Yatron did so because he determined that the evaluation was consistent with the record as a whole. R. at 29.

Plaintiff's RFC determination is reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2). ALJ Yatron was not required to accept the findings of any medical provider when determining Plaintiff's RFC, id. , and he adequately explained his RFC determination in his decision, R. at 26-28. ALJ Yatron concluded that Plaintiff could perform the full range of work at all exertional levels with the following nonexertional limitations: that she refrain from work involving detailed instructions, and that she be limited to simple and routine work involving limited contact with the public. R. at 28. ALJ Yatron came to this conclusion after considering all of the medical evidence, including the assessments of state agency consultants Dr. Rosenfield and Dr. Gensemer, as well as the evaluation of Mr. Pompilio. R. at 26-28. ALJ Yatron offered reasons for his determination that sufficiently permit

meaningful judicial review. See Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002).

ALJ Yatron's reliance on Dr. Gensemer's assessment was supported by substantial evidence, and thus, the Court will overrule Plaintiff's fifth objection.

E.    Objection 6: ALJ Yatron Erred in Not Considering Plaintiff's Work History

Plaintiff's final objection is that Judge Wells should have found cause for remand based on ALJ Yatron's failure to credit Plaintiff's testimony based on her good work history. Plaintiff cites Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979) and Taybron v. Harris, 667 F.2d 412, 415 n.6 (3d Cir. 1981) to argue that a claimant with a long work history is entitled to a significant credibility finding. However, those cases afforded substantial credibility to work history of claimants whose subjective symptoms were supported by the evidence of record. The fact alone that a claimant has a long work history does not require a remand, particularly when medical evidence does not support a claimant's testimony of the extent of her limitations. See Corley v. Barnhart, 102 Fed. Appx. 752, 755 (3d Cir. 2004) (concluding that the ALJ did not

err in not affording plaintiff heightened credibility based

solely on plaintiff's work history).

       Of Plaintiff's credibility, ALJ Yatron concluded that:

> [a]fter careful consideration of the
> evidence, the undersigned finds that
> [Plaintiff's] medically determinable
> impairment could reasonably be expected to
> cause the alleged symptoms; however,
> [Plaintiff's] statements concerning the
> intensity, persistence and limiting effects
> of these symptoms are not credible to the
> extent they are inconsistent with the above
> residual functional capacity assessment.

R. at 29. ALJ Yatron offered several reasons for finding

Plaintiff's claims less than fully credible, including her

account of her daily life and the evidence of record. See id.

Thus, ALJ Yatron did not err in not affording her testimony

substantial credibility based on her work history, and remand is

not warranted.


**VI.   CONCLUSION**

       For the reasons set forth above, the Court will

overrule Plaintiff's objections and adopt Judge Wells' Report

and Recommendation in full. An appropriate order follows.